UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                              )
         v.               )   CRIMINAL NO. 04-30054-MAP
                              )
JOHN BOITEAU, JR.,        )
                              )
      Defendant.       )

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits the following Memorandum in opposition to defendant, John Boiteau's ("Boiteau") motion to suppress physical evidence seized from his residence pursuant to a search warrant and motion to suppress statements made to law enforcement agents.

Briefly, Boiteau has moved to suppress child pornographic images found on four computers and computer related items on the grounds that the affidavit submitted in support of the search warrant application failed to establish probable cause. Boiteau also claims that the warrant lacked sufficient particularity. Next, Boiteau argues that his confession to law enforcement agents was made in violation of his Fifth and Sixth Amendment rights.

As discussed in more detail below, Boiteau's motion to suppress physical evidence should be denied because the affidavit submitted in support of the search warrant established probable cause, the warrant was sufficiently particular, and the agents,

in executing the warrant, did not impermissibly exceed its scope.
Boiteau's motion to suppress his statements made to law
enforcement agents should be similarly denied because Boiteau
voluntarily spoke to the police after making a knowing and
intelligent waiver of his <u>Miranda</u> rights.

FACTUAL BACKGROUND

On October 19, 2004, U.S. Postal Inspector Richard Irvine
("Irvine") applied for and obtained an anticipatory warrant to
search the residence of John Boiteau, including any computers
contained therein, for evidence of the receipt and possession of
child pornography. (The search warrant and supporting affidavit
are attached as Exhibits A and B respectively.)  The affidavit,
prepared by Irvine, specified that within ten days of issuance of
a search warrant, Irvine would oversee the controlled delivery of
a mail bag containing two videotapes which contained child
pornography.  (Exhibit B ¶ 28).  The videotapes had been ordered
by Boiteau from an Inspection Service undercover operation.
(Exhibit B ¶ 22).  The affidavit described the contents of the
videotapes (Exhibit B ¶ 29).  In addition, still images from each
one of the videotapes was attached to the affidavit as Exhibits
A-F.  (<u>Id</u>.)  Annexed to the warrant was an attachment entitled
"List of Items to be Seized."  Numerous items relating to the
receipt and possession of child pornography were included on the
list.

2

The videotapes were delivered to Boiteau's residence on October 20, 2004. The warrant was executed subsequent to the controlled delivery of the videotapes. During the course of the search, law enforcement agents retrieved the mail bag containing the videotapes. Agents also seized other videotapes, CD's, 9 digital cameras and four computers. Boiteau, who was at home at the time of the search, consented to an interview. Irvine advised Boiteau of his <u>Miranda</u> rights and told Boiteau that he was not under arrest. Boiteau was also informed that he could stop answering questions at any time. Boiteau then signed a Miranda waiver form. During the ensuing interview Boiteau admitted that he ordered the videotapes containing child pornography even though he knew they were illegal. Boiteau then acknowledged that his computer "probably" contained images and movies containing child pornography. In addition to making oral statements regarding his interest in child pornography, Boiteau provided a written statement in which he described his interest in child pornography. A copy of Boiteau's written statement is attached as Exhibit C.

ARGUMENT

I. <u>The search warrant was supported by probable cause.</u>

The Fourth Amendment contains the familiar admonition that warrants may issue only on a showing of "probable cause, supported by Oath or affirmation. . . ." U.S. Const. Amend. IV;

3

see United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1986).
Under Illinois v. Gates, probable cause to issue a search warrant
exists when "given all the circumstances set forth in the
affidavit . . . there is a fair probability that contraband or
evidence of a crime will be found in a particular place." Id. at
238; United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996);
United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir.
1988)(probable cause exists when "the affidavit upon which a
warrant is founded demonstrates in some trustworthy fashion the
likelihood that an offense has been committed and that there is
sound reason to believe that a particular search will turn up
evidence of it").

   In performing the probable cause analysis, this Court should
assess the information provided in the affidavit supporting the
warrant application.  See United States v. Khounsavanh, 113 F.3d
279, 283 & n.1 (1st Cir. 1997); Brinegar v. United States, 338
U.S. 160, 175-76, 69 S.Ct. 1302 (1949)(internal quotation marks
omitted).  "Probability is the touchstone" and common sense sets
the standard. Khounsavanh, 113 F.3d at 283; Texas v. Brown, 460
U.S. 730, 742 (1983) (plurality opinion)("probable cause is a
flexible, common-sense standard. . . . The magistrate, in
determining the existence of probable cause must look to the
totality of the circumstances").

   Here, there was probable cause to support the issuance of

4

the warrant for the search of Boiteau's residence including any computers found within the home. The affidavit, submitted by an experienced postal inspector, outlined Boiteau's use of a computer to access websites which featured child pornography. (Exhibit B ¶¶ 16-18). Specifically, according to information obtained during the course of an investigation into a global child pornography enterprise known as "Regpay," Irvine learned that Boiteau had used his credit cards to purchase Internet access to sites known to contain child pornography on May 9, 2003 and June 6, 2003. (Exhibit B ¶ 18).

The affidavit further related that Boiteau had ordered - and paid for - two videotapes entitled "Kissing Cousins" and "Sports Exam." (Exhibit B ¶¶ 22-24). The videotapes had been offered to Boiteau through "YBCVIDS," an undercover operation managed by postal inspectors in Harrisburg, Pennsylvania. (Exhibit B ¶ 19). Boiteau selected these two videotapes from an order form after requesting additional information for videotapes containing "Pissing, Pedophilia, Preteen Girls & Boys, Masturbation, Lesbians and T.V." (Exhibit B ¶ 20). Boiteau paid $45.00 for the videotapes with a personal check. Boiteau also forwarded his e-mail address to YBCVIDS and subsequently received confirmation for his order via e-mail. (Exhibit B ¶¶ 22, 24). Based on these facts, and his knowledge and experience, Irvine concluded that there was a probable cause to believe that child pornography

5

would be at Boiteau's residence at the time of the search.
(Exhibit B ¶ 30).

Irvine's affidavit manifestly demonstrated probable cause
that evidence relating to the receipt and possession of child
pornography would be found at Boiteau's residence. Although
Boiteau's motion seeks to suppress "all" evidence seized from his
residence, he does not appear to seriously challenge the seizure
of the two videotapes. This is not surprising as once the
videotapes were delivered, probable cause to believe that child
pornography would be found at Boiteau's residence became
overwhelming. The thrust of Boiteau's argument seems to be that
there was insufficient probable cause to seize his computers and
computer related items. However, the inference that evidence of
illegal child pornography would be found on Boiteau's computer
rather than (or in addition to) the main residence was clearly
established. "The nexus between the objects to be seized and the
premises searched need not, and often will not, rest on direct
observation, but rather 'can be inferred from the type of crime,
the nature of the items sought, the extent of an opportunity for
concealment and normal inferences as to where a criminal would
hide [evidence of a crime] . . . '" United States v. Charest,
602 F.2d 1015, 1017 (1st Cir. 1979); United States v. Feliz, 182
F.3d 82, 88 (1st Cir. 1999).

In the case of collectors of child pornography, many courts

6

have recognized that evidence is likely to be found stored on computer hard drives and diskettes.  In an analogous case, United States v. Wilder, 2005 WL 1106922 (D. Mass), the district court reviewed an affidavit for probable cause which, like Irvine's affidavit, provided "information about the perceived habits of collectors of child pornography in general." Id. at 4.  The court concluded that this information coupled with the fact that the defendant was previously discovered to have a collection of child pornography "permitted the magistrate to fairly infer that it was probable that [the defendant] had committed a criminal offense, but also that it was probable that execution of the search warrant applied for would yield evidence of the crime in the form of computer images and perhaps other copies of child pornography." Id. at 4.  See also, United States v. Albert, 195 F.Supp. 2d 267, 278 (D. Mass. 2002).

Moreover, Irvine's affidavit stated that, based on his six years of training and experience investigating child pornography cases, collectors of child pornography rarely destroy correspondence with other collectors and almost always possess their material in a private location such as their residence. (Exhibit B ¶¶ 1, 8).  Irvine further opined that based on his experience collectors of child pornography frequently use computers to store and trade pornography.  (Exhibit B ¶ 10). According to the affidavit, collectors in general use computers,

7

and particularly access to the Internet to obtain images of child pornography which they then download and save, maintaining a collection in both electronic and hard copy formats. (Exhibit B ¶¶ 10-11). Thus, it was certainly a reasonable inference, especially given the history of Boiteau's interest in child pornography, that Boiteau would have stored items relating to child pornography on his computers which were located at his residence.

This is particularly true since the facts showed that Boiteau had purchased internet access to websites containing child pornography only fifteen months prior to ordering the videotapes that were delivered on October 20, 2004. Contrary to Boiteau's assertion, the information regarding Boiteau's use of a computer to access and obtain child pornography was not stale. Although the First Circuit Court of Appeals has not yet addressed the issue of staleness in the context of child pornography cases, other circuits have found search warrants to be valid under similar circumstances. "Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned." United States v. Newsom, 402 F.3d 780, 783 (7th Cir. 2005). See also, United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997)(upholding search warrant based on information ten months old because "the [agent] explained that collectors and distributors of child pornography value their

8

sexually explicit materials highly, 'rarely if ever' dispose of
such material, and store it 'for long periods' in a secure place,
typically in their homes."); <u>United States v. Harvey</u>, 2 F.3d
1318, 1322-23 (3d cir. 1993)(concluding that a warrant was not
based on stale information, in part because those who collect
child pornography tend to keep it); <u>United States v.
Ricciardelli</u>, 998 F.2d 8, 12 n. 4 (1st Cir. 1993)(stating,
"history teaches that [pornography] collectors prefer not to
dispose of their dross, typically retaining obscene materials for
years"); <u>United States v. Rabe</u>, 848 F.2d 994, 996 (9th Cir.
1988)(upholding warrant despite two-year delay between original
seizures and warrant because more recent letters indicated that
pornographic material was still being kept by the defendant).

Of course, to support a finding of probable cause, there is
no requirement that the belief be shown to be necessarily correct
or more likely true than false.  See <u>Spinelli v. United States</u>,
393 U.S. 410, 419 (1969)("only the probability, and not a prima
facie showing" is required).  Here, the facts recited in the
affidavit easily reached the probable cause threshold.

Relying on <u>United States v. Brunette</u>, 256 F.3d 17 (1st Cir.
2001) Boiteau next argues that there is insufficient probable
cause because the Magistrate Judge did not conduct an independent
review of the images displayed on the internet websites
subscribed to by Boiteau in May and June of 2003.  Boiteau's

argument is unpersuasive.  Based on the circumstance present here, it was not necessary for the Magistrate Judge to view the contents of the websites to establish probable cause.  First, the Magistrate Judge did view still images taken from the videotapes before he issued the warrant.  Thereafter, once Boiteau took delivery of the videotapes, there was sufficient probable cause to believe that child pornography would be found at his residence.  The subsequent search of the computers was similarly justified because the affidavit established that Boiteau was a collector of child pornography.  As discussed above, Irvine's affidavit described the role that computers play in the distribution and collection of child pornography.  (Exhibit B ¶¶ 10-11).  It also established that Boiteau had paid for internet access to child pornography sites approximately fourteen months before he ordered two videotapes containing child pornography.  Based on this information, the Magistrate Judge could reasonably conclude that Boiteau, as a collector of child pornography, would use his computer(s) to facilitate his collection.  Accordingly, the search and seizure of Boiteau's computer was supported by probable cause.

Moreover, even if this Court were to find that probable cause to search the computers was lacking simply because the Magistrate Judge did not view the images from the websites, Boiteau's motion to suppress should be denied under the good

10

faith exception to the probable cause requirement. "In the absence of an allegation that the Magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 426 (1989). Here, there is no allegation that the Magistrate Judge had "abandoned his detached and neutral role." Likewise, there is no evidence that Irvine was dishonest or reckless in seeking the warrant. On the contrary, Irvine's affidavit included facts that worked against the government. According to Irvine, Boiteau was sent a second solicitation to purchase child pornography via e-mail which Boiteau did not respond to. (Exhibit B ¶ 24). This fact coupled with the detailed account of the investigation inexorably leads to the conclusion that Irvine's reliance on the issuance of the warrant was objectively reasonable. See e.g. United States v. Robinson, 359 F.3d 66, 70 (1st Cir. 2004).

2. The search warrant adequately identified the location to be searched and the items to be seized.

Boiteau's next argument – that the search warrant did not properly identify the items to be seized is wrong as a matter of fact and law.

A warrant must describe with particularity the places to be searched. See Bonner, 808 F.2d at 868; Ferreras, 192 F.3d at 10.

11

Here, the warrant's authorization of the search and seizure of any computers and related disks, software and storage devices was sufficiently particular and narrow to satisfy the particularity requirement.  In <u>United States v. Uphan</u>, the First Circuit Court of Appeals upheld a similar warrant in an analogous case.  <u>Id</u>. 168 F.3d 532 (1st Cir. 1999).  <u>See</u> <u>also</u>, <u>Albert</u>, 195 F.Supp. 2d at 275-276.  Because the instant case is not distinguishable from <u>Uphan</u> in any significant way, Boiteau's argument that the warrant lacked particularity should be rejected.

3.    <u>Boiteau's confession was not made in violation of his Constitutional rights.</u>

Boiteau claims that his confession was made involuntarily and in violation of his Fifth and Sixth Amendment rights. Boiteau, who concedes that he was advised of his <u>Miranda</u> warnings, signed a <u>Miranda</u> waiver and agreed to be interviewed by law enforcement agents.  Boiteau also provided the agents with a written statement.  See Exhibit C.  Although Boiteau boldly claims --through his attorney's memorandum of law -- that he was "not free to leave and was compelled by the government agents to answer questions put to him"  (See Defendant's Motion to Suppress Statement, p. 5.), he has failed to provide the Court with any facts via affidavit or otherwise that support his claim. Boiteau's failure in this regard precludes any meaningful analysis of his claim and therefore his motion to suppress his statements should be rejected out of hand.

12

In any event, even if the Court is inclined to permit Boiteau to proceed with his claim, the government will demonstrate at an evidentiary hearing that Boiteau was not in custody, was advised of and waived his <u>Miranda</u> rights and that his oral and written statements were made voluntarily.

CONCLUSION

Based on the foregoing, the defendant's motion to suppress physical evidence and statements should be denied.  In addition, because there are no factual issues in dispute with respect to the defendant's motion to suppress physical evidence seized from his residence, it is unnecessary to conduct an evidentiary hearing on that motion.  With respect to Boiteau's motion to suppress his confession, the government notes that Boiteau has failed to present any facts via affidavit or otherwise that warrant resolution through a hearing.  Accordingly, the scheduling of an evidentiary hearing is premature.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    _____
       Ariane D. Vuono
       Assistant U.S. Attorney

Dated: September 12, 2005

13

CERTIFICATE OF SERVICE

Hampden, ss.                          Springfield, Massachusetts
                                      September 12, 2005

     I, Ariane D. Vuono, Assistant U.S. Attorney, do hereby
certify that I have served a copy of the foregoing by mail to
Bernard T. O'Connor, Jr., Esq., 1391 Main Street, Harrison Place,
Suite 1022, Springfield, MA 01103.

                              Ariane D. Vuono
                              Assistant U.S. Attorney

AO 93 (Rev. 8/98) Search Warrant

# UNITED STATES DISTRICT COURT

DISTRICT OF ___MASSACHUSETTS___

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

Residence of John Boiteau, Jr.
92 Bowles Park
Springfield, MA

## SEARCH WARRANT

CASE NUMBER:

TO:          Postal Inspector Richard J. Irvine          and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Postal Inspector Richard J. Irvine _____ who has reason to

Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

The residence of John Boiteau, Jr., 92 Bowles Park, Springfield, Massachusetts, is a wooden framed two floor single family residence. The residence is white in color with black trim. There are two columns that support an awning which protects the front steps. The number 92 is clearly posted on the column to the right of the front steps. Above the front door is written the number "ninety two." The residence also has a detached wooden framed two car garage which is white in color with black shingles on the roof.

in the _____ District of _____ Massachusetts _____ there is now

concealed a certain person or property, namely (describe the person or property)

See Attachment A

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____

Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _____ United States Magistrate Judge Kenneth P. Neiman _____

as required by law.                                          U.S. Judge or Magistrate Judge

at    Springfield, Massachusetts

Date and Time Issued                                    City and State

Kenneth P. Neiman
United States Magistrate Judge

Name and Title of Judicial Officer                      Signature of Judicial Officer

**EXHIBIT**

**A**

This form was electronically produced by Elite Federal Forms, Inc.

# THE UNITED STATES POSTAL INSPECTION SERVICE

## SEARCH WARRANT INVENTORY

Position/Box.: _____ / _____

Subject Name: _Joseph Belleau_    Date: _10/20/04_

Subject Address: _92 Boules_    Floor/Room No. _____

Inspector(s): _Irvine, Kelley_    Case No. _____

Safe: _____ Cabinet: _____ Credenza: _____ Desk: _____ Drawer: _____

Shelf: _____ Table: _____ Wall: _____ Other: _____

| QUANTITY | DESCRIPTION OF ITEMS | |
|---|---|---|
| 1 | Brown Mailing Bag from YBCVINS | A1178131 |
| 1 | Grey UMASS Folder | A1178105 |
| 1 | Piece of letter from YBCVINS | A1178136 |
| 11 | DVD's | A1178118 |
| 1 | CD | A1178130 |
| 1 | DELL LAPTOP Computer | A1178104 |
| 1 | Computer Tower (No name) | A1178120 |
| 1 | Box of various CD/DVDs | A1178135 |
| 1 | GATE way Tower | A1178119 |
| 1 | DELL Tower | A1178117 |
| 1 | Brown Box of Mini-Cartridges | A1178133 |
| 1 | Bag of DVD's/various | A1178132 |
| 2 | Photo's of young girl | A1178121 |
| 1 | letter from YBCVINS | A1178129 |
| 1 | CD Rom Drive / 3 CD's | A1178103 |
| 1 | Priority Box of various Tapes/underwear | A1178109 |
| 1 | Bag various CP images | A1178137 |
| 1 | KODAK Carousel RE Camera | A1178116 |
| 1 | Canone Digital Camera | A1178114 |

DISTRIBUTION OF COPIES:  White–U.S. Magistrate (Return with Warrant)
Yellow–Inspector (Attach to PS Form 714)
Pink–Subject Searched
Green–Evidence Control Officer (Attach to PS Form 714)

PS Form 8164, October 1993

THE UNITED STATES POSTAL INSPECTION SERVICE

# SEARCH WARRANT INVENTORY

Position/Box.: _2_ / _____

Subject Name: _John Beaulac_     Date: _10/29/04_

Subject Address: _92 Beaulac_     Floor/Room No. _____

Inspector(s): _Irving, Kelly_     Case No. _____

Safe: _____ Cabinet: _____ Credenza: _____ Desk: _____ Drawer: _____

Shelf: _____ Table: _____ Wall: _____ Other: _____

| QUANTITY | DESCRIPTION OF ITEMS | |
|---|---|---|
| 1 | Check Book Ledger / VOIA Check | A1178138 |
| 1 | Rolls - un developed film | A1178115 |
| VARIOUS | Photo's | A1178110 |
| VARIOUS | Photo's | A1178113 |
| 1 | CANON Digital Camera | A1178108 |
| 1 | Canon A400 | A1178106 |
| 2 | Blue folders w/ Photos | A1178112 |
| 1 | Olympus Camera | A1178111 |
| BOX | Misc Video Tapes | A1178139 |
| 3 | DVDs | A1178123 |
| VARIOUS | Yellow envelope various photos | A1178124 |
| VARIOUS | Photo's | A1178122 |
| 1 | MISC paperwork | A1178125 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DISTRIBUTION OF COPIES: White–U.S. Magistrate (Return with Warrant)
Yellow–Inspector (Attach to PS Form 714)
Pink–Subject Searched
Green–Evidence Control Officer (Attach to PS Form 714)

Page 2 of 2 pages

PS Form 8164, October 1993

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

**DISTRICT OF** MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Residence of John Boiteau, Jr.
92 Bowles Park
Springfield, MA

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:  04mJ6 80

I _____ Richard J. Irvine _____ being duly sworn depose and say:

I am a(n) _____ U.S. Postal Inspector _____ and have reason to believe
                              Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

The residence of John Boiteaut, Jr., 92 Bowles Park, Springfield, Massachusetts, is a wooden framed two floor single family residence. The residence is white in color with black trim. There are two columns that support an awning which protects the front steps. The number 92 is clearly posted on the column to the right of the front steps. Above the front door is written the number "ninety two." The residence also has a detached wooden framed two car garage which is white in color with black shingles on the roof.

in the _____ District of _____ Massachusetts
there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence, instrumentalities, and/or fruits of a crime

concerning a violation of Title ___ 18 ___ United States code, Section(s) _____ 2252A
The facts to support a finding of Probable Cause are as follows:
SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.        ☐ Yes   ☒ No

_Richard J. Irvine_
Signature of Affiant

Sworn to before me, and subscribed in my presence

_October 19, 20Y_                           at     Springfield, Massachusetts
Date                                                 City and State

Kenneth P. Neiman, U.S. Magistrate Judge
Name and Title of Judicial Officer                    Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## ATTACHMENT A

## List of Items to be Seized

Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems, hard drive and other computer and/or video related operation equipment, in addition to computer photographs, Graphic Interchange formats and/or photographs, slides or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

Any and all correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

All originals and all copies and all negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all motion picture films and video cassettes of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all envelopes, letters, and other correspondence offering to transmit through interstate commerce including by United Sates Mails, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United Sates Code, Section 2256.

Any and all envelopes, letters, and other correspondence identifying persons transmitting, through interstate commerce including by United States Mails, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all books, ledgers, records, and materials including stationery, envelopes, stamps and financial records bearing on or

used in connection with the receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission, through interstate commerce including by United States Mails, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records including financial records pertaining to the purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United Sates Code, Section 2256.

Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States code, Section 2256.

Any and all diaries, notebooks, notes and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

Any and all materials and photographs depicting sexual conduct, whether between adults or between adults and minors.

**AFFIDAVIT**

I, Richard J. Irvine, being duly sworn, depose and state the following:

1.    I am a Postal Inspector of the United States Postal Inspection Service, having been appointed to this position in September 1985. I am assigned to the Boston Division and responsible for the investigation of various postal crimes, including violations of Title 18, United States Code, and Section 2251-2252A, which pertain to the sexual exploitation of children. I have investigated child pornography cases and various sexual related offenses for six years and received training in the investigation of those cases by attending seminars and courses.

2.    I submit this affidavit in anticipation and support of an application for a search warrant for the residence of John Boiteau Jr. at 92 Bowles Park, Springfield, Massachusetts, including computers located therein, for evidence of the receipt and possession of child pornography in violation of Tile 18, United States Code, sections 2252(a)(2)and(4)(B).

3.    The residence is described as a wooden framed two floor single family residence.  The residence is white in color with black trim. The roof is made of asphalt shingles

1



which are black in color.  There is a satellite dish
attached on the front right as you face the residence. There
is a silver flag pole on the right side front lawn.  There
is a mailbox to the left of the front door.  There are two
columns that support an awning which protects the front
steps.  The number 92 is clearly posted on the column to the
right of the front steps.  Above the front door is written
the number "ninety two."  The residence also has a detached
wooden framed two car garage which is white in color with
black shingles on the roof of the garage.

4.  I have reviewed the case files regarding this
investigation.  All of the facts reported in this affidavit
are of my personal knowledge unless otherwise stated.  I
have not included each and every fact known to me regarding
this investigation, but rather have included only those
facts necessary to establish probable cause for obtaining
the search warrant.

### Relevant Statutes

5.    Title 18, United States Code, Section 2252, makes
it illegal for any person to knowingly transport, ship,
receive, distribute, reproduce for distribution, sell,
possess with intent to sell, or possess visual depictions
that affect interstate commerce, if: (1) the production of

2

such visual depiction involves the use of an actual minor engaged in sexually explicit conduct; and (2) such visual depictions is of such conduct.

6.   Title 18, United States Code, Section 2256 provides the definitions for the section 2252. A "minor" is any person under the age of 18 years old. "Sexually explicit conduct" includes actual or stimulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person.  "Producing" means producing, directing, manufacturing, issuing, publishing or advertising. A "visual depiction" includes undeveloped film and videotape, and data stored on a computer, computer disk or by any electronic means which is capable of conversion into a visual image.

7.   In this affidavit, I will refer to any individual under the age of eighteen as a child or minor, and any visual depictions of a child or minor engaging in sexually explicit conduct as defined in Title 18, United States Code, Section 2256 as child pornography.

#### Background

8.    Based on my training and experience, I know that collectors of child pornography maintain and possess their materials, including films, videotapes, electronic storage media, correspondence, and source information within a private and secure location, such as their residence.  They typically retain their materials and related information for many years.  They often seek to correspond with other collectors to share information and trade material in an effort to increase or enhance their collection.

9.    My training and experience with similar cases also indicates that collectors of child pornography rarely destroy correspondence from other collectors unless they suspect their activities will be uncovered by law enforcement authorities or others.  These collectors sometimes attempt to conceal their correspondences and records of orders and sources. They have been known to use assumed identities and post office boxes addresses in an attempt to conceal their activities.  This behavior has been documented by Postal Inspectors and other law enforcement officials involved in the investigation of child sexual exploitation cases throughout the country.

4

10.    Computers now enable collectors to easily correspond with other collectors and to easily obtain images of child pornography.  Once connected to the Internet, a computer can utilize an Internet service provider, such as America on Line.  This enables a computer to connect to a network which, in turn, connects to another computer.  These service providers allow electronic mail services between subscribers and subscribers of other networks.  This communication structure is ideal for the collectors. Anonymous communication allows the user to locate others of similar inclination and/or child victims while maintaining anonymity.  Once contact is established, it is then possible to send text messages and graphic images.  The computer can be connected to the Internet via a telephone line, a cable wire, a DSL line, or a T-1 line or by another connection method. By connecting to a dedicated network of computers, electronic contact can be made to millions of computers around the world.

11.    The capacity of the electronic storage device (the hard drive) in home computers has grown tremendously within the last several years.  Drives widely in use now can store thousands of images with very high resolution.  In addition, individuals have been known to place images of children

5

being sexually exploited on other storage medium, such as floppy disks, CD-ROMs, zip disks, and files stored off-site with an Internet provider. It is only with careful examination by computer experts of the electronic storage devices that it is possible to recreate the evidence trail.

12. Subscribers to the service provided by AOL and other such services are able to devise user names that appear on the screen during communication with other subscribers. In most cases, the user name is not the full or actual name of the person. The subscriber can fill out a descriptive profile corresponding to the user name. The profile describes the interests and characteristics of the user but need not identify him by user name.

13. Computer hardware, software, and data are instruments and evidence used in the commission of this crime. Based on my training and experience, I know that searching and seizing information from computers requires all electronic storage devices (along with related peripherals) to be searched later by qualified computer experts in a controlled environment. A search of computer records must often be conducted off-site. An off-site search is necessary because computer storage devices (like hard disks, diskettes, tapes, laser disks and memory sticks)

6

can store the equivalent of thousands of pages of information.  Additionally, a suspect may try to conceal criminal evidence, as by storing it in random order with deceptive file names.  This may require searching authorities to examine all the stored data to determine which particular files are evidence or instruments used in the commission of the crime.  This sorting process can take weeks or months, depending upon the volume of data stored. It would be impractical to attempt this type of data search on-site.

Further, searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, therefore it is difficult to know prior to a search which expert is qualified to analyze the system and its data.  Data search procedures are exacting scientific procedures designed to protect the integrity of the evidence and recover even "hidden," erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (either from external sources or

7

from destructive codes imbedded in the system as a "booby
trap"), a controlled environment is essential to its
complete and accurate analysis.

14.    Based on my training and experience and
consulting with Forensic Computer Analysts, I know that
searching computerized information for evidence or
instruments of the crime commonly requires the seizure of
all the computer system's input/output peripheral devices
(including related documentation, passwords and security
devices).  This is necessary so that a qualified computer
expert can accurately retrieve the system's data in a
controlled environment.  Peripheral devices, which allow
users to enter and retrieve data from storage devices, vary
widely in their compatibility with other hardware and
software.  Many system storage devices require particular
input/output devices in order to read the data on the
system.  It is important that the analyst be able to
properly retrieve the evidence listed above.  In addition,
the analyst needs the relevant system software (operating
systems, interfaces and hardware drives), any applications
software that may have been used to create the data (whether
stored on hard drives or on external media), as well as all

8

related instruction manuals or other documentation and data security devices.

15.    Because this investigation involves violations of both State and Federal law, assistance has been sought and will be provided by both the local and State Police assigned to investigate crimes against children.

## BASIS OF INVESTIGATION

16.    Beginning in March 2003, Postal Inspectors from the New Jersey and Caribbean Divisions, in response to a request from the United States Attorney's Office for the District of New Jersey, partnered with the Bureau of Immigration and Custom Enforcement (ICE) Agents, and with other law enforcement agencies.    The task force initiated an investigation into a global child pornography enterprise. The investigation resulted in the identification of a company known as Regpay.    Regpay's principles were located in Belarus and Latvia.    Regpay used a credit card processor, Iserve/Connections USA, located in Ft. Lauderdale, Florida, to process customer credit card transactions for subscriptions to child pornography web sites.

17.    In June, 2003, federal search warrants were executed by the task force on the offices of Iserve/Connections USA.    Additional search warrants were

9

served on various computer servers throughout the country associated with Iserve/Connections USA and Regpay. As a result of these searches, a total of 37,000 customer records/transactions of individuals residing in the United States have been seized. ICE agents, in an undercover capacity, subscribed to the web sites related to the 37,000 records/transactions. The vast majority of the web sites featured child pornography. A few of the web sites contained child erotica material.

18. ICE agents, at their Cyber Smuggling Center (C-3), Fairfax, Virginia, compiled the database of the 37,000 United States subscribers from the records seized pursuant to the search warrants. Listed in the database as a customer, was John A. Boiteau Jr. and John Boiteau, 92 Bowles Park, Springfield, MA 01104. The database showed that on May 9, 2003, Boiteau Jr. using credit card # 4117 7000 1966 5196 and on June 6, 2003, Boiteau using credit card # 5184 4501 2000 7293 purchased Internet access to sites known to contain child pornography.

## FACTS OF THE INVESTIGATION

19. Based on the information in the previous paragraph, on August 6, 2004, John A. Boiteau Jr., 92 Bowles Park, Springfield, MA 01104 was mailed a solicitation from

10

an undercover Postal Inspection Service operation located in

Clear Spring, Maryland.  The undercover operation is managed

by Postal Inspector Tom Kochman of Harrisburg, Pennsylvania.

The undercover operation is designed to offer those

individuals who are interested in seeing children being

sexually exploited the opportunity to purchase videotapes

containing such material.  The advertisement/solicitation

was in the form of a one page flyer.  The solicitation read

as follows:

### YBCVIDS
### P.O. BOX 176
### CLEAR SPRINGS, MD 21722

I want to invite you to become a customer of one of the
newest, best stocked companies when it comes to finding all
of your video interests.  I know from my own experience how
difficult it is to find the types of videos that you want
without being embarrassed to ask for it, only to find out
that they don't carry that type of material.  I know what it
is like to surf the web and always be afraid of giving out
your credit card number and when you finally do, what you
get isn't what was advertised. I guarantee satisfaction or
your money will be returned and you can keep the tapes.

I have taken the steps to find all the right kind of
videos that can't be found in any video store and if you do
find them on the web, you can't be sure of what you will
get. I feature everything that you can imagine on my videos
and I specialize in the taboo, hard to find, forbidden
material that people are looking for.
I invite you to look over the brochure and take the time
to complete the short information sheet to request my
special listing of videos. Once I receive your request the
video listing will be sent to you promptly as will all
order. At this time I can only offer video tapes but will be

11

offering DVD's in the near future.

```
--------------------------------------------------------------
NAME_____   Animals () Bondage () Enemas ()
ADDRESS_____   Pissing () Shitting () Greek ()
CITY_____   B&D    ()   S&M () Pedophilia ()
                                Preteen-Boys () Girls () Incest()

SIGNATURE*_____Young Teen-Boys() Girls() Incest()
Masturbation () Piercing () Rubber () Lesbians () Anal ()
Rape () Diapers () TV () Spanking () Gay Males ()
Special Requests ()_____
```

*By my signature above I certify that I am over 18 years
of age and request that the video listings sent to me. I
am not a law enforcement office or private citizen
working for such an agency.

20.   On August 16, 2004, Inspector Kochman received
an envelope in the mail that contained a reply from the
solicitation mailed to Boiteau.  The envelope was addressed
to YBCVIDS, P.O. Box 176, Clear Spring MD 21722-0176 and had
the return address of John Boiteau Jr., 92 Bowles Park,
Springfield, MA 01104-1533.  The envelope was postmarked in
Springfield, MA 011 on August 13, 2004.  Inside the envelope
was part of the one-page flyer that had been mailed to
Boiteau.  Handwritten on the paper was the name and address
John Boiteau Jr., 92 Bowles Park, Springfield, MA 01104 with
a signature below the name.  Boiteau requested more
information concerning videotapes with Pissing, Pedophilia,
Preteen-Girls&Boys, Masturbation, Lesbians and TV.

21.  On August 19, 2004, Inspector Kochman

12

mailed an order form and six pages which listed the
videotapes available for sale to John Boiteau Jr., 92 Bowles
Park, Springfield, MA 01104.  On the envelope, Kochman
listed the return address of YBC, P.O. Box 176, Clear
Spring, MD 21722.

22.  On September 14, 2004, Kochman received an
envelope in the mail from Boiteau.  The envelope was
addressed to YBCVids, P.O. Box 176, Clear Spring MD 21722
and had the return address of John Boiteau Jr., 92 Bowles
Park, Springfield, MA 01104.  The envelope was postmarked in
Springfield, MA 011 on September 7, 2004.  Inside the
envelope were an order form and a personal check for $45.00.
Written on the order form was a request for two videotapes
called "Kissing Cousins" and "Sports Exam." Also written on
the order form was the e-mail address of jboit@the-spa.com.
The $45.00 Fleet Bank check # 791 using account # 00246
11000, had been made payable to YBCVIDS.  In the upper left
hand corner on the check was listed the name and address of
John Boiteau Jr., 92 Bowles Park, Springfield, MA 01104

23.  The listing for each of the two videotapes read as
follows:

   **Kissing Cousins**-The second tape has 2 blonde boys who are
   cousins that are about 11-13 years old, they get in bed
   together and get naked. They start out with alot of

13

kissing, and then start jacking off. After a while they suck each others dicks and fingerfucking their ass. They are both really cute and the action is hot

**Sports Exam**-Two young soccer girls, about 9 and 12, have to get a physical at school so they can play sports. The doctor has them get naked and then one at a time has them lay naked on the exam table. He begins by fingering the first girls pussy while she jacks him off and sucks his dick. He does the same with the second girl, except after she sucks his dick, he fucks her and blows his load on her hairless pussy.

24.  On September 22, 2004, Kochman, using the e-mail address of YBCVIDS@Yahoo.com, sent an e-mail to jboit@the-spa.com.  The e-mail stated that his order had been received and was being processed.  In the e-mail, Kochman mentioned having a new catalog and inquired whether Boiteau was interested in it.  No response was received from Boiteau.

## Additional Investigation

25.  I ran an Auto track check on any individuals living at 92 Bowles Park in Springfield, Massachusetts. Auto track is an on-line information source that can identify, locate and profile individuals.  Auto track has cross-links to over four billion records. Auto track listed John A. Boiteau as residing at that address.

26.  On October 6, 2004, I telephoned Verizon Nationwide 411 and asked for directory assistance for Springfield,

Massachusetts.  I asked for a listing on John Boiteau Jr.,
92 Bowles Park, Springfield, MA 01104.  The individual at
directory assistance provided me a telephone number of 413-
737-3360.  This telephone number matched the telephone
number that Auto track had listed for John Boiteau Jr., 92
Bowles Park, Springfield, MA.

    27.    On October 8, 2004, I spoke with Maureen Mckenna
of the United States Postal Service.  She informed me that
John Boiteau received mail delivery at 92 Bowles Park,
Springfield, Massachusetts 01104.

    28.   Within ten days of issuance of a search warrant, I
will oversee the controlled delivery of a mailing bag
containing the two videotapes (listed above) to John Boiteau
Jr., 92 Bowles Park, Springfield, MA 01104.  The package
will be placed into the US mail in Springfield, MA and
delivered to Boiteau at his residence.  The mailing bag will
be addressed to John Boiteau Jr., 92 Bowles Park,
Springfield, MA 01104 with a return address of YBCVIDS, P.O.
Box 176, Clear Springs, MD 21722.

    29.    I have reviewed each of the two videotapes.
Based on my training and experience, each videotape depicts
actual minors engaged in sexually explicit conduct, as
defined in Title 18, United States Code, Section 2256.

                              15

Specifically:

> **Kissing Cousins** – two minor boys are masturbating and then one of the minor boys performs oral sex on the other

> **Sports Exam** – a minor female masturbates an adult male and the adult male performs oral sex on a minor female.

I have prepared still images from each one of the videotapes and attached them as Exhibits A-C (Kissing Cousins) and D-F(Sports Exam).

## CONCLUSION

30.  Based on the foregoing, there is probable cause to believe that there currently is, and after delivery of the above-described videotape will be, evidence of violations of Title 18, United States Code, Sections 2252(a)(2) (Receipt of child pornography) and 2252(a)(4)(B) (Possession of child pornography) located at the residence of John Boiteau, 92 Bowles Park, Springfield, MA 01104.

31.  Accordingly, I respectfully request that this court issue and seal until further order of the court, a search warrant for the residence of John Boiteau, including any computers located therein, authorizing any Postal Inspector of the Unites states Postal Service, with appropriate assistance from other law enforcement authorities, to enter said premises and to seize the items described in Attachment

16

A, all of which constitute evidence, instrumentalities, and/or fruits of violations of title 18, United States Code, Sections 2251-2252A.

_____
Richard J. Irvine
United States Postal Inspector

Subscribed and sworn before me this __19th__ day of October, 2004.

_____
Kenneth P. Neiman
United States Magistrate Judge

17



STATE OF ~~WASHINGTON~~ MASSACHUSETTS )
                                       ) SS
County of HAMPDEN                      )

I, JOHN BOITEAU JR. , make the following statement freely and voluntarily. No threats, promises of reward, or duress of any nature have been used in obtaining this statement from me.

ON OCTOBER 20, 2004 I RECEIVED 3 PACKAGES FROM THE POST MAN. MINUTES LATER, A NUMBER OF LAW ENFORCEMENT OFFICERS, LED BY RICHARD IRVINE, POSTAL INSPECTOR, ARRIVED AT MY DOOR WITH A SEARCH WARRANT. I MADE SPACE FOR AN INTERVIEW, WHERE IT BECAME APPARENT THAT THEY WERE CONCERNED WITH CHILD PORNOGRAPHY IN MY POSSESION. I DESCRIBED THE MATERIALS CONTAINED ON MY COMPUTERS. ONE OF THE PACKAGES I RECEIVED CONTAINED VIDEO TAPES I HAD ORDERED THRU THE MAIL, FROM AN AD FROM YBC VIDEO. I ORDERED 2 TAPES, BOTH DESCRIBED AS DEPICTING SEXUAL ACTIVITY WITH YOUNG GIRLS AND YOUNG BOYS, WHICH I CONSIDER TO BE CHILD PORNOGRAPHY. I PAID FOR THE VIDEOS USING A PERSONAL CHECK FOR $45.00. AT THE TIME THAT I ORDERED THEM, I REALIZED THAT IT WAS WRONG, BUT MY CURIOSITY GOT THE BETTER OF ME, AND I ORDERED THEM WITH NO IDEA THAT IT WOULD GET ME INTO TROUBLE.

I HAVE AN INTEREST IN DOWNLOADING "LOLITA" PICTURES FROM INTERNET SITES. THESE PICTURES INCLUDE IMAGES OF GIRLS, AND SOMEBOYS, RANGING IN AGE FROM 10 OR SO, TO ADULT, AND (I AM TOLD) ARE CONSIDERED EROTICA. IN THE COURSE OF FINDING AND DOWNLOADING THE LOLITA IMAGES, I ALSO DOWNLOADED ~~THE~~ IMAGES DEPICTING CHILD PORNOGRAPHY, FROM VARIOUS FILE-SHARING SITES THAT I CAME ACROSS. I VERY SELDOM LOOK AT THOSE PORNAKRAPHIC IMAGES, AND THEY HAVE BEEN TRANSFERRED FROM DRIVE TO DRIVE OVER TIME. ~~I ONLY~~ I ONLY LOOK AT THE PICTURES I AM NOT ATTRACTED IN REALITY TO YOUNG GIRLS OR BOYS, AND ~~WOOL~~ HAVE NEVER, OR WOULD

PAGE 1 OF 2

NEVER DO ANYTHING INAPPROPRIATE WITH CHILDREN. ~~I WRITE~~ CHILD
PORNOGRAPHY IS WRONG, BECAUSE ~~IT~~ IT HARMS THE CHILD.
I AM NOT ~~ATTRACT~~ GENERALLY ATTRACTED TO CHILD PORNOGRAPHY,
EXCEPT IN THIS INSTANCE, OUT OF CURIOSITY. I DON'T
BELIEVE THAT ~~THE~~ CHILDREN WERE HARMED IN ANY MANNER IN
PRODUCING CHILD EROTICA. TO THE CONTRARY, CHILD PORNOGRAPHY
IS WRONG, BECAUSE OF THE HARM DONE TO THE CHILDREN.
~~THE BY IT~~ I ORDERED THE YBC TAPES WITHOUT THINKING
ABOUT THERE BEING ILLEGAL, AND THAT I WAS PROMOTING
HARM TO CHILDREN BY ORDERING THE TAPES. I WAS WRONG,
AND I AM VERY SORRY.
~~IT~~ I HAVE NEVER DONE ANYTHING WITH ANY CHILD; ~~I~~ I
~~WOULD EVER~~ BE WOULD NEVER DO ANYTHING OF THAT NATURE.
~~I BE I TO THE~~ CONTRARY TO WHAT IT MIGHT SEEM BY
MY ORDERING THE TAPES, I DID. I AM OPPOSED TO CHILD PORNOGRAPHY.
I RATIONALIZED THAT THE HARM WAS ALREADY DONE, AND I HAD
NO DIRECT PART IN IT. THAT WAS WRONG - I WAS A PART
IN PROMOTING CHILD PORNOGRAPHY.
   I ~~IT~~ HAVE NEVER TOUCHED, (BEEN TOUCHED), OR DONE ANYTHING INAPPROPRIATE
WITH CHILDREN, NOR WOULD I EVER. IT WOULD BE WRONG. I WOULD
TAKE A POLYGRAPH TEST TO ATTEST TO THAT FACT. I HAVE
NO HISTORY OF CRIMINAL ACTIVITY. I AM THE SOLE CARE
PROVIDER FOR MY 85-YEAR OLD, DIABETIC MOTHER, WHO IS VISION-
IMPAIRED AND ~~UNABLE~~ ABLE TO WALK ONLY WITH A ~~WALKER~~ WALKER, BECAUSE
I NEED TO BE AROUND HER, I HAVE A LOT OF SPARE TIME —
I'M RETIRED FROM FEDERAL CIVIL SERVICE — AND SPEND A LOT OF
TIME ON THE INTERNET.

THIS ABOVE 2-PAGE STATEMENT WAS WRITTEN BY ME AND IT IS
THE TRUTH TO THE BEST OF MY KNOWLEDGE.
                10/20/04   11:34 AM        John Boiler

Subscribed and sworn to before me on the
20th of October 2004 at Springfield, MA
                            Richard J. Levine
                            Postal Inspector

Witness: Sgt. J.M.B.
         Spfld Police Dept.