FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2006 AUG 28 P 4: 12

U.S. DISTRICT COURT

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
|  | ) | Criminal No. 04-30054-MAP |
| vs. | ) | |
|  | ) | |
| JOHN BOITEAU | ) | |

### MOTION IN LIMINE FOR HEARING RE: ADMISSIBILITY OF TESTIMONY OF GOVERNMENTS EXPERT JOHN MADAMA

Defendant, John Boiteau, moves that this court hold a hearing to determine the admissibility of the proffered testimony of a proffered government expert, John Madama, regarding his opinion that the images depicted on video tapes found in defendant's possession depict real children.

As grounds for this motion, defendant submits that the Court should determine the admissibility of Madama's testimony, within the parameters outlined by the Supreme Court in Daubert v. Merrell Dow Pharmaceutical, 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

In Daubert, the Supreme Court interpreted the version of Fed.R.Evid. 702 that then existed to require a preliminary inquiry by a trial judge. The Daubert court relied in part upon the text of Fed.R.Evid. 104(a), which provides:

> Preliminary questions concerning the qualification of a
> person to be a witness, the existence of a privilege,
> or the admissibility of evidence shall be determined by
> the court, subject to the provisions of subdivision (b)
> [pertaining to conditional admissions].

In 2000, Rule 702 was amended in light of <u>Daubert</u> and the Supreme Court's later opinion in <u>Kumho Tire Co. v. Carmichael</u>, 119 S.Ct. 1167 (1999), which applied <u>Daubert</u> to experts other than scientists. The Rule now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The factors listed in the Rule include some of those cited in <u>Daubert</u> as relevant to the inquiry. The nonexclusive list of factors in <u>Daubert</u> include: 1) whether the expert's technique or theory can be or has been tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential error rate; 4) the existence and maintenance of standards and controls; and 5) whether the technique has been generally accepted in the scientific community. <u>Daubert</u>, 509 U.S. at 593-94.

The amended version of Rule 702 specifically

> rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. . . . The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.

Advisory Committee Notes to 2000 Amendment to Fed. R. Evid. 702.

The Advisory Committee Notes urge that, "[i]f the witness is relying solely or primarily on experience," the witness must explain how that experience leads to the

2

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." [citing Daubert] The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. Id.

According to discovery received on Aug.24, 2006, Mr. Madama is expected to testify that he visually analyzed the images in question, and concluded that the images did depict real children. His conclusions are based on his findings that the images are real and not computer generated due to the technical difficultyin creating this image or its texture. The disclosure provided to date fails to adequately identify the "bases and reasons" for Madama's conclusions. In Free Speech Coalition v. Ashcroft, 535 U.S. 234 (2002), the United States argued that virtual images "are indistinguishable from real ones[.]" Madama now claims that he can distinguish - by visual inspection alone - authentic images. In addition he fails to compare or analyze the images obtained to other known individuals that have been confirmed as a known person and confirmed to be a known person by authorities in previous investigations.

The proffered opinion bears similarities to the expert testimony rejected in Kumho Tire. In that case, the district court had excluded evidence of a visual inspection of an allegedly defective tire, concluding, that there were "insufficient indications of the reliability of 'the component of Carlson's tire failure analysis which most concerned the Court, namely, the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis.'" Kumho Tire, 526 U.S. at 146.

3

As the Kumho Tire Court noted,

> the specific issue before the court was not the reasonableness in general of a tire expert's use of a visual and tactile inspection to determine whether overdeflection had caused the tire's tread to separate from its steel-belted carcass. Rather, it was the reasonableness of using such an approach, along with Carlson's particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant[.]

Kumho Tire, 526 U.S. at 154.

Here, the problem with Madama's proposed testimony is that the visual inspection used to identify evidence of whether the videos were technology dated and the conclusion that the images were real due to the technological difficulties in creating images is completely incapable of being tested. Although it appears that Madama would testify that he never has found an instance of virtual child pornography because of the number of digital images that would be needed, he goes on to state that in order to achieve "motion realism through digital imaging 20-30 sequence images would be needed. These two assertions contradict each other. If digital imaging can be achieved the expert cannot know whether the image is real or a virtual image based upon the difficulty in producing a virtual image and he contradicts himself when he asserts that motion realism through digital imaging can be attained, but in this case it would prove too difficult.

A similar flaw doomed the proffered expert testimony in Kumho Tire. As the Supreme Court held,

> the particular issue in this case concerned the use of Carlson's two-factor test and his related use of visual/tactile inspection to draw conclusions on the basis of what seemed small observational differences. We have found no indication in the record that other experts in the industry use Carlson's two-factor test or that tire experts such as Carlson

4

normally make the very fine distinctions about, say, the symmetry
of comparatively greater shoulder tread wear that were
necessary, on Carlson's own theory, to support his conclusions.
Nor, despite the prevalence of tire testing, does anyone refer to any
articles or papers that validate Carlson's approach.

The government's expert disclosure asserts that "expressive features and complex backgrounds support realism" but then adds that in order to achieve that through digital imaging 20-30 images per second are required to achieve realism, and accordingly it is not present in this case, and the images are therefore real people.. No foundation is identified for this assertion. Instead, the government seems to base its trial of this case, and its expert's conclusion, on the presumption that images of child pornography are real, because of the technical difficulty involved in producing computer generated images, unless proved to be otherwise. This burden-shifting premise has been rejected by both the Supreme Court and the First Circuit. Free Speech Coalition v. Ashcroft, 535 U.S. 234, 255-56 (2002); United States v. Hilton, 386 F.3d 13, 18 (1 Cir. 2004).

Respectfully submitted,
THE DEFENDANT
By His Attorney

BERNARD T. O'CONNOR, JR., Esq.
1391 Main Street, Suite 1022
Springfield, MA 01103
(413) 781-5311
(413) 7746-2707-fax
BBO# 557872