UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                          ) | Criminal No. 04-30054-MAP |
| ) | March 21, 2007 |
| JOHN BOITEAU,              ) | |
|     Defendant ) | |

## MOTION TO EXTEND TIME TO SELF-REPORT TO THE BUREAU OF PRISONS

Now comes the Defendant, John Boiteau in the above-entitled matter and respectfully moves pursuant to Federal Rule Criminal Procedure Rule 32(b), that this Court grant relief from its amended Orders dated January 16, 2007 and February 22, 2007, and extend the time for the Defendant to self report to the Bureau of Prisons, now scheduled for April 3, 2007, for an additional 60 days, to on or about June 3, 2007.

By way of background and as further reasons in support of this Motion the Defendant states the following:

1.  On December 1, 2006 the Court ordered the defendant to self report to the Bureau of Prisons on February 2, 2007.

2.  On January 16, 2007 this Court extended the time in which Mr. Boiteau had to report to March 3, 2007, and again on February 22, 2007 extended the time to report to April 3, 2007. Mr. Boiteau now requests additional time for those reasons as stated in the letter dated March 18, 2007 and attached as Exhibit A.

3.  As the Court is aware Mr. Boiteau has been the sole caretaker for his elderly, 87 year old mother at the family home in Springfield Massachusetts for many years. As a result of this case Mr. Boiteau has been making arrangements for the future care of his mother, as she could not subsist on her own without assistance. Mr. Boiteau has made

arrangements and moved his mother to an assisted living facility in Springfield.

4. His mother suffers from a number of serious medical conditions, as outlined in Defendant's previous motion including extreme back pain; compression fracture in her spine; diabetes; heart abnormalities; infection; and a liver problem. She has been hospitalized frequently and requires daily assistance and medications. As such she has not yet returned to her assisted living apartment.

5. Mr. Boiteau has been diligent in his efforts to make arrangements for his mother, but because of the complexity of the situation and the fact that there are no other family members available or willing to take on this responsibility, the burden of his mother's recent medical problems and living arrangements is shouldered completely by Mr. Boiteau.

6. Accordingly, Mr. Boiteau requests an additional extension of time for sixty (60) days in which to report to the Bureau of Prisons, to a date on or about June 3, 2007, to allow him to continue to properly prepare to put his mother's recent emergency medical affairs in order prior to reporting.

7. This request is not made for the purpose of undue delay and the Government will not be prejudiced by a short delay.

8. The defendant has complied at all times with the terms of his release imposed by this Court and will continue to abide by those conditions.

As further reasons the defendant states Courts have inherent power to grant continuances in the furtherance of justice. A motion for a continuance of the sentencing date is addressed to the Court's discretion. If the motion to continue is sufficient in all respects, and the application is made not for the purposes of a delay, it is an abuse of discretion to deny the motion. The Court should not refuse a continuance that is properly requested, where the ends of justice clearly require it to be granted.

The District Court is accorded broad discretion to grant or deny continuances, and

only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay will abuse it. United States v. Rodriguez-Marrero, 390 F.3d 1, 21-22 (1st Cir. 2004). The First Circuit will look to several factors, including "the delay entailed, the reasons for the request, whether the moving party is at fault, any inconvenience to the court and litigants, and whether the denial of a continuance unfairly would prejudice the moving party." Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 63 (1st Cir. 2003). The Court may look at prior delays and their reasons, the hardship to the nonmovant, and the good faith of the movant. Here the request is made in good faith and not for the purpose of unreasonable delay.

Here the delay in the reporting date for 60 days is reasonable in light of the seriousness of situation with Mr. Boiteau's mother's recent unexpected health problems; Mr. Boiteau's diligence in preparing his mother's affairs prior to the date set for reporting; and Mr. Boiteau's purpose is not intended to unreasonably or purposely delay the reporting date.

For the above stated reasons the defendant requests this court allows his Motion to Extend the Time to Self-Report to the Bureau of Prisons.

3/21/07

RESPECTFULLY SUBMITTED
THE DEFENDANT, JOHN BOITEAU

By _/s/ Bernard T. O'Connor, Jr._
Bernard T. O'Connor, Jr.
O'CONNOR, MARTINELLI CULLINAN & PIKULA
1391 Main Street - Suite 1022
Springfield, MA 01103
(413) 781-5311
BBO# 557872

CERTIFICATE OF SERVICE

I, Attorney Bernard T. O'Connor, Jr., do hereby certify on this March 22 2007, I made service of the foregoing Motion by delivering, in hand, a copy of same to AUSA Karen Goodwin, U. S. Attorney's Office, and the United States Marshall's Department, at the Federal Building and Courthouse, 1550 Main Street, Springfield, MA.

BERNARD T. O'CONNOR, JR.

*EXHIBIT A*

March 18, 2007

92Bowles Park
Springfield, MA

Attorney Bernard T. O'Connor Jr.
Suite 1022, 1391 Main St.
Springfield, MA 01103-5311

Dear Ben,

I hope that I am not becoming a nuisance, but I have another update on my mother's condition.

The last time I wrote to you she was in a rehabilitation facility, Wingate of Springfield, where she was doing extremely well with the rehab, but was having difficulty with her blood sugars, and her appetite and eating. Were it not for the diabetes problem, she was ready to be discharged.

Then, on March 5, she was again admitted to Baystate with heart failure, after the Wingate staff found her unresponsive, with purple extremities. Her liver function and thyroid tests were also abnormal, and she was initially on the cardiac intensive care floor. She had also experienced shortness of breath. She was on heart telemetry and oxygen, and was receiving IV's for her heart, for fluid in her lungs, and for rehydration (if I remember correctly what the doctors and nurses told me.) Her follow-up thyroid tests were normal, and a thyroid problem was ruled out, but her liver function tests were low, and they suspected liver failure. Fortunately, her liver function tests improved, as apparently did her heart failure, and she was moved a step down to a cardiac telemetry (monitoring) floor. She was given 2 units of hemoglobin, which helped to improve her condition, as well as potassium. She continued to improve, except for her appetite and the amount she ate. Moreover, her blood glucose values were very good, in fact much better than normal. She remained essentially bedridden and weakened, however, until the last day or two when she was seen and evaluated by physical therapy.

By the 11th of March, she was considered no longer in need of hospital care, and was returned to the rehabilitation facility, where she continued to receive acute skilled nursing care. There she was still weak, but did regain her strength such that she was able to restart therapy, albeit at a level she had previously surpassed.

Her blood sugars resumed being erratic, with dangerous highs, and she was put on a different insulin regimen, under which her glucose levels have started to improve. Her appetite, however, remains suppressed, and she still eats very little. All of this has been an incredible burden for a woman of 87 to bear.

Our goal is to have her return to the assisted living facility where she started (where she might finally be able to meet your aunt!), but that depends essentially on how much her physical condition improves and stabilizes, how much she is able to do **without** assistance, and whether the facility determines whether she meets or exceeds the level of care they are able to provide. I have already made preliminary arrangements for extra fee-based assistance for her (such as to bring her to and from medical appointments, periodically check her blood sugars, and to provide companionship and extra assistance in her hygiene and self-care.

She states that she can't accept the fact that I will be incarcerated, and I have been trying to get her by that hurdle, but I think that she believes that some miracle with occur, and I will not actually go to prison. Moreover, having been her caregiver for so long, and the root of her mental and health problems, I very much want to see her in a stable position before I depart.

As I'm sure you have inferred by now, I would like you to file a motion for another 30 day extension of my reporting date. I feel that Judge Ponsor had been extraordinarily compassionate and empathetic, and in a way I feel I am unnecessarily imposing upon his good will. I will always hold his Honor in high esteem, and be eternally grateful for the kindness and compassion he has extended to me. However, if my mother has to go into a nursing home, I don't think she will survive. I truly believe that the extra time is necessary for me to support her through her efforts for stability in her life, and to be in the best possible position she can.

I remain completely prepared to report to the Elkton prison, and assuredly would have reported by now, if it were not for my mother's problems.

Again, Ben, I can't thank you enough for all you have done for me, and for which I will always be grateful.

Yours truly,

*John Boiteau*

John Boiteau